UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Repete Vereen,<br>    *Plaintiff*,<br><br>    v.<br><br>Silgan Plastics Corp.,<br>    *Defendant.* | Civil No. 3:09cv572 (JBA)<br><br><br>November 4, 2010 |

RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Repete Vereen filed suit against Defendant Silgan Plastics Corp. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Vereen, a black male, alleges that Silgan failed to promote him to a position for which he was qualified on account of his race, instead awarding that position to a less qualified, non–minority applicant.[1] He further alleges that without a promotion to a less strenuous job, he had no choice but to retire earlier than he wished. Silgan has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the basis that no genuine issue of material fact evidencing discrimination exists. In support of its motion, Silgan cites the fact that Vereen neither applied for the Temporary Mold Clerk position nor did he meet Silgan's requisite qualifications for the position.

I.    Factual Background

Plaintiff Repete Vereen is a 62–year–old retiree who spent 42 years at Silgan Plastics' Deep River, Connecticut facility. (Vereen Dep., Ex. A to Loc. R. 56(a)1 Stmt. [Doc. # 33] at 9:1–9.) Silgan is a plastics manufacturer, and at its Deep River facility it makes plastic bottles

---

[1] At oral argument, plaintiff's counsel clarified that there was only one promotional position (temporary Mold Clerk) which remained at issue in this case.

for the pharmaceutical and personal care industries. (Grispino Decl., Ex. C to Loc. R, 56(a)1 Stmt., ¶ 2.) Vereen started work at the plant on August 6, 1966—then operated by Silgan's predecessor—and retired on January 1, 2009. (Vereen Dep. at 9:1–9.) Vereen held various jobs at the plant before becoming a Production Set–Up Operator sometime in the 1980s. (*Id.* at 11:2–13:4.) As a Production Set–Up Operator, Vereen was responsible for outfitting nineteen of the plant's production machines for manufacturing various bottles, troubleshooting the machines, and keeping his area clean. (*Id.* at 11:2–18:1.) He worked in the plant's Blow Trim Department, where employees finish forming the necks of previously molded bottles, heat–treat them, and send them to be packed. (*Id.*) Another Silgan employee, Carlyle Burgess, who is white, also held the Production Set–Up Operator position. (*Id.* at 19:2–16.) Vereen worked a shift from 8:00 a.m. to 4:00 p.m., and Burgess, who had less seniority, worked from 4:00 p.m. to 12:00 a.m. (*Id.* at 12:17–24, 19:2–16.)

In the 2000s, Silgan began downsizing: the plant's workforce went from 216 in January 2005 to 165 in December 2005 to 107 in June 2008. (Grispino Decl. ¶ 3.) As part of the downsizing, Silgan eliminated the plant's Utility position, and the Production Set–Up Operators' responsibilities correspondingly increased to include grinding up scrap material and keeping workers who did the packing furnished with boxes. (Vereen Dep. 19:17–20:8, 21:21–22:4.) In December 2005, Silgan eliminated the Production Set–Up Operator position and reclassified Vereen and Burgess as Finishers, making them responsible for inspecting and packing bottles as they came off the trim line. (Vereen Dep. 40:13–42:16; Grispino Decl. ¶ 5; Exs. 1 & 2 to Grispino Decl.) Even though Silgan typically paid Finishers only $13.59 per hour, Silgan initially maintained Vereen and Burgess's hourly wage at $19.07. (Vereen Dep. at 34:5–23.)

On June 13, 2008, Silgan posted an opening for a Mold Room Repairman position. (Grispino Decl. ¶ 16.) The Mold Room Repairman position involved maintaining, cleaning, and repairing mold equipment and tooling. (Job Bid # 3, Ex. 6 to Grispino Decl.) The posting described the qualifications as requiring knowledge of Microsoft Word, Excel, and Outlook; the ability to prepare purchase requisitions, stand for long periods of time, and lift seventy pounds or more; and "strong mechanical aptitude." (*Id.*) Rosemary Grispino, an employee in the human resources department, took down the posting on June 17, and Silgan claims that it received no qualified bids. (Grispino Decl. ¶ 17.) As a result, it had to recruit someone from outside its Deep River facility. (*Id.*)

On June 25, 2008, Jim Spinks, the Corporate Manager of Human Resources, and Grispino, told Vereen that Silgan would lower his pay to $13.59 per hour. (Vereen Dep. at 34:5–23; Ex. C to Grispino Decl.) and did so on July 7, 2008. (Grispino Decl. ¶ 12.) Silgan also lowered Burgess's hourly wage a week earlier, on June 30. (*Id.*) The delay was due to the fact that Vereen was out on sick leave from Monday, June 30 to Thursday, July 3. (*Id.*; Vereen Dep. 38:23–39:4.)

On June 30, 2008, to fill the vacant Mold Clerk position on a temporary basis while searching for a permanent Mold Clerk, Grispino posted an announcement for a Temporary Mold Clerk position at $15.05 per hour. (Ex. 5 to Grispino Decl.) The Temporary Mold Clerk was to have the same responsibilities as the Mold Room Repairman position with the exception that Silgan did not require the ability to prepare requisitions for the temporary position. (Exs. 5 & 6 to Grispino Decl.) The Temporary Mold Clerk posting listed as a requirement for the job "Knowledge of Microsoft Word, Excel & Outlook." (Ex. 5 to Grispino Decl.) Applications were due three days later, on July 2. (*Id.*) Only Carlyle Burgess

applied, and he was awarded the position. Burgess assumed his new job on July 7, the same day that Vereen returned to work. (Grispino Decl. ¶ 23; Vereen Dep. 38:23–39:4.) Thus, when Vereen began his sick leave, he was unaware of the Temporary Mold Clerk position; when he came back, his less senior, white co–worker had been promoted to the higher–paying, less–strenuous job. (Pl.'s Resp. to Def.'s Interrogs., Ex. B to Loc. R. 56(a)1 Stmt at 6.)

Grispino explains the timing by noting that "[w]hen I decided to post . . . the temporary Mold Clerk position . . . and at the time I posted . . . the temporary Mold Clerk position, I was not aware that Plaintiff Repete Vereen was going to be out sick from June 30, 2008 until July 3, 2008." (Grispino Suppl. Decl., Ex. A to Reply [Doc. # 35], ¶ 2.) Grispino receives absentee reports only of the previous day's shifts: she declares that she could not have known about Vereen's sick leave until July 1, the day after it began. (*Id.* ¶ 3.)

Grispino declares that Burgess was qualified for the position, and Vereen was not. (*Id.* ¶ 4.) At the time the Temporary Mold Clerk job announcement was posted, Burgess was familiar with Microsoft Word, Excel, and Outlook; he taught himself how to use those programs by "purchasing and reading approximately 15 books on those and other Microsoft programs." (Burgess Decl. ¶¶ 8–10.) He "also had knowledge related to the other qualifications for the temporary Mold Clerk position, including having prepared purchase requisitions and tracked inventory before applying for the position." (*Id.*) By contrast, Vereen admittedly lacked knowledge of Microsoft Word, Excel, or Outlook and had no prior experience with purchase requisitions. (Vereen Dep. 68:7–69:7.)

II. Discussion[2]

At the summary judgment stage in a Title VII case, applying the *McDonnell Douglas Corp. v. Green* burden shifting test, 411 U.S. 792, 802 (1973), "a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001). Initially, a plaintiff must establish a *prima facie* case of discrimination under both statutes by making a *de minimis* showing that

> (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.

*Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)). On the fourth factor, it is sufficient that a rational finder of fact be able to draw any inferences of discrimination; "it is not the province of the summary judgment court to decide what inferences should be drawn." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (rational finder of fact could infer discrimination in termination of plaintiff's employment based on defendant's

---

[2] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

immediate effort to hire someone with the same qualifications and on plaintiff's prior satisfactory work performance).

The Court will assume without deciding that Plaintiff has met his *de minimis* burden of establishing a *prima facie* case of race discrimination under Title VII, because Plaintiff's evidence supporting the fourth prong rests upon the same evidence he offers to rebut Silgan's proffered legitimate reason for hiring a less senior, white co-worker in his stead. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 n.1 (2d Cir. 2002) (discussing how the *prima facie* and pretext analyses can "tend to collapse as a practical mater"). Therefore, the Court next considers Silgan's evidence of the reasons for its adverse employment action. Silgan advances two arguments, that Vereen never applied for the available jobs and that Vereen was unqualified for those jobs.

In failure-to-promote cases, the Second Circuit "require[s] a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." In *Petrosino,* the Second Circuit articulated a formal test for an exemption. "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, *and* (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 227 (emphasis added).[3]

---

[3] District courts within the Second Circuit have frequently applied the *Petrosino* exemption to failure-to-promote cases, but have rarely granted it. *See, e.g., Billups v. Dent Wizard Int'l Corp.*, No. 05 Civ. 9356(DAB), 2010 WL 2541361, at *8 (S.D.N.Y. June 14, 2010) (not granting exemption where employer posted openings on intranet and employee did not check site)*; Beebe v. N.Y. Times Co.*, 666 F. Supp. 2d 321, 336 (E.D.N.Y. 2009) (not granting exemption where "a job posting was provided but did not provide sufficient detail"); *Dunn*

The parties agree that Vereen never applied for any position. The dispute centers on whether *Petrosino* forecloses Plaintiff's exemption from the specific–application requirement. Defendant argues that the Temporary Mold Clerk vacancy announcement was posted, and therefore, he is not excused from showing that he applied. Vereen counters that Silgan posted the bulletin for the Temporary Mold Clerk position only between June 30 and July 3, 2008, when it knew that he would be absent from work and when white co–coworkers including Burgess would see it and apply. While Grispino avers that when she posted the bulletin for the Temporary Mold Clerk position on June 30, 2008, she was not aware that Vereen was out sick because she does not "receive the absentee report with the names of individuals who are out sick until the next day (or possibly the day after) because the report contains the names of all of the persons absent from all shifts." Additionally, she avers, and it is undisputed that the bulletin was posted for the standard duration for Silgan job postings. At oral argument, Vereen argued that Grispino thus knew he was out sick the next day and did nothing to advise him about the posting. However, plaintiff offers no evidence that defendant has ever taken any such notification to absent employees such that there could be any inference that Grispino intentionally withheld posting information from Vereen so a white worker could be hired for it. Vereen stated during his deposition that he had no reason to believe that Grispino would have denied him the opportunity to bid on any job.[4]

---

*v. Sec'y of United States, Dep't of Interior*, No. 5:00CV1747(HGM/GHL), 2006 WL 1510097, at *13 (N.D.N.Y. May 26, 2006) (not excusing requirement where "there [was] no evidence that the vacancy in question was not posted"); *but see Howe v. Town of Hempstead*, No. 04cv0656(DRH)(ETB), 2006 WL 3095819, at *6 (E.D.N.Y. Oct. 30, 2006) (excusing requirement because of the "the lack of formality and fluidity of the promotion process").

[4] "Q: Do you have reason to believe that Ms. Grispino would have denied you the opportunity to bid on any job? A: No. Q: Any reason to believe that she wouldn't have

In the absence of such evidence, no reasonable fact finder could determine that Defendant acted discriminatorily in timing the posting of the job bulletin such that Vereen should be exempted from the Second Circuit's requirement that he apply for a job in order to make out a case of discrimination under Title VII.

Additionally, Plaintiff admitted he was unfamiliar with Microsoft Word, Excel, and Outlook, which Plaintiff's counsel acknowledged during oral argument meant Plaintiff was unqualified for the Temporary Mold Clerk position. No evidence is proffered demonstrating either that Vereen met Silgan's specified qualifications or that Silgan developed those qualifications in bad faith. By contrast, Burgess declared that he possessed the requisite qualifications, including knowledge of Microsoft Word, Excel, and Outlook. (*See* Burgess Decl. ¶¶ 8–10.) An employee is qualified for a position only if "he possesses the basic skills necessary for performance of the job." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). This determination is made in reference to the "criteria the employer has specified for the position." *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 127 (2d Cir. 2004). In the absence of evidence that Silgan developed the criteria for the Temporary Mold Clerk position in bad faith, and given that Vereen did not meet the criteria but Burgess did, a reasonable fact–finder could not infer that Silgan's hiring Burgess for the position in place of Vereen was discriminatory.

---

given you the job if you were qualified and were the senior bidder? A: No" (Vereen Dep. at 79:1–8.)

III.   Conclusion

Accordingly, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of November, 2010.